## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM GROUP INC,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A,

      Defendants.

Civil Action No. 25-cv-1909

## COMPLAINT

Plaintiff, POM Group Inc, dba Komuso Design (an innovative wellness company hereby referred to herein as "Plaintiff" or "Komuso"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants") for their willful and deliberate patent infringement.

## NATURE OF THE ACTION

1.      Defendants, through online commerce platforms including without limitation the e-commerce stores and domain names operating under the seller alias IDs identified in Schedule A attached hereto, (collectively, the "Seller IDs"), have infringed, and continue to infringe, Plaintiff's United States Patent No. 11,433,195 (the "'195 Patent") and United States Design Patent No. D840,529 (the "'529 Design Patent") (collectively, the "Asserted Patents") by making, using, importing, offering for sale, and/or selling unauthorized imitations of products embodying the Asserted Patents, in violation of 35 U.S.C. § 271(a) (the "Infringing Products"). Plaintiff brings this action to address Defendants' willful and deliberate infringement of its patents, and to protect

1

consumers from unauthorized and potentially dangerous Infringing Products sold over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Asserted Patents and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it has sustained and continues to sustain.

2.     POM Group Inc, (dba Komuso Design, or "Komuso") is a corporation duly organized and existing under the laws of Florida with its principal place of business in Fort Lauderdale, Florida. Komuso has extensive business presence all over the country including Pennsylvania. Komuso is owned and operated by Mr. Todd Joseph Steinberg ("Mr. Steinberg"), an accomplished inventor and entrepreneur residing in Florida who has developed and commercialized innovative breathing necklaces that enable users to control their breathing and achieve mindfulness through scientifically-validated techniques. Komuso Products are sold via the official company website https://www.komusodesign.com and through its official storefront on Amazon.com (the "Komuso Websites"). True and correct copies of the Komuso Websites are attached hereto as **Exhibit 1**.

3.     Mr. Steinberg is the founder of Komuso Design, a wellness company he established with his wife, Vanessa Steinberg, in 2017. Before venturing into the wellness industry, Mr. Steinberg had a successful career in student travel and event management. The high-pressure environment of the student travel industry took a toll on him, leading him to develop an interest in mindful meditation as a way to manage stress and anxiety. This personal journey, combined with his entrepreneurial experience, inspired him to pivot himself into the wellness space. Partnering with Vanessa, a fashion designer, Todd created "The Shift," a unique wearable tool designed to promote slower, deeper breathing for stress relief. Inspired by the breathing practices of 17th-

century Japanese Komusō monks, The Shift reflects Mr. Steinberg's mission to blend practicality with style, aiming to make mindfulness accessible and fashionable. Through Komuso Design, Mr. Steinberg seeks to foster a "breathing revolution," emphasizing simplicity and self-reliance over technology-driven fixes, and continues to lead the company as its president with a vision to transform lives through conscious breathing.

4.      Mr. Steinberg applied for a patent for his invention on August 24, 2017. The United States Patent and Trademark Office examined his application and issued the '195 Patent, which is entitled "BREATHING DEVICE AND METHOD OF CONTROLLING BREATHING USING THE DEVICE," on September 6, 2022. A copy of the '195 Patent is attached as **Exhibit 2**.

5.      Mr. Steinberg applied for a patent for the innovative design on August 18, 2017. The United States Patent and Trademark Office examined his application and issued the '529 Design Patent, which is entitled "BREATHING APPARATUS," on February 12, 2019. A copy of the '529 Design Patent is attached as **Exhibit 3**.

6.      The '195 Patent and the '529 Design Patent are collectively referred to as the "Asserted Patents."

7.      Komuso currently sells and offers for sale breathing necklaces embodying the innovative invention and design claimed in the Asserted Patents, (collectively, the "Breathing Necklaces," "Patented Products," or the "Komuso Products").

8.      Komuso is the assignee of both Asserted Patents and is the owner of all rights, title, and interest in, and has standing to sue for infringement of the Asserted Patents.

9.      After the Asserted Patents were issued, Komuso conducted an online investigation and discovered that the Defendants were selling products that embodied the Asserted Patents, despite having no license or authorization from Komuso.

3

10.     Defendants' Infringing Products are unauthorized reproductions that do not meet the quality standards and specifications of the patented products. Defendants' systematic and widespread marketing and sale of the Infringing Products directly violates Komuso's exclusive rights under the Patent Act, causing immediate and irreparable harm to Komuso's market position and brand value. The Infringing Products threaten to destroy Komuso's reputation and goodwill and cause significant harm to Komuso's business, for which there is no adequate remedy because sales of products embodying the Asserted Patents are the core of Komuso's business.

11.     On information and belief, and based on specific evidence of coordinated activities including identical product listings, shared supplier relationships, and common shipping origins, Defendants' infringing activities of making, using, offering for sale, selling, and/or importing Infringing Products arise from the same transaction, occurrence, or series of transactions. Specifically, upon information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

12.     Plaintiff therefore brings this action for federal patent infringement pursuant to 35 U.S.C. § 271, et seq.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a), 1331.

4

**Personal Jurisdiction**

14.     Federal courts may "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft,* 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F. 2d 434, 436 (3rd Cir. 1987)). This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." Therefore, Pennsylvania authorizes personal jurisdiction over a defendant who commits even a single tortious act in the Commonwealth for the purpose of thereby realizing pecuniary benefit. 42 Pa. Cons. Stat § 5322 (a). Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation or use of an interactive website through which products may be purchased and are sold to consumers within the judicial district. *See e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008);

5

*Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

15.     Although the Third Circuit has not yet considered specific jurisdiction arguments in the context of an online infringement case, this Court has found guidance on this issue from the rulings of the Seventh Circuit. *Nifty Home Prods. v. Ladynana United States*, No. 22-cv-0994, 2023 U.S. Dist. LEXIS 79743 at *13-14 (W.D. Pa. May 5, 2023). Specifically, the Court has applied the Seventh Circuit's rulings to establish personal jurisdiction over China-based infringers that have conducted commerce over the internet, even if those infringers have no presence in the United States. *Id.* at *15 (citing *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Talisman Designs, LLC v. Dasani, et al.*, No. 20-cv-1084, slip op., p. 2 (W.D. Pa. Oct. 13, 2020)). "[S]ellers on Amazon, Aliexpress, and eBay 'may not avoid personal jurisdiction by this Court on the basis that the Great Wall of China renders the district court without jurisdiction to protect brand owners from counterfeit products like this.'" *Id.* (quoting *Dasani*, No. 20-cv-1084, slip op., p. 2). Foreign counterfeiting defendants are also subject to jurisdiction in this Court, and elsewhere in the United States, under Federal Rule of Civil Procedure 4(k), since they lack sufficient contact to any particular state and have not established which forum would be proper venue to bring suit. *Id.* at *16 (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)).

16.     Alternatively, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants: (a) are not subject to jurisdiction in any state's courts of general jurisdiction; and (b) have sufficient contacts with the United States as a whole such that the exercise of jurisdiction is consistent with the United States Constitution and laws. Specifically, Defendants regularly conduct, transact and/or solicit business

throughout the United States, including in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in the United States, including in Pennsylvania and in this judicial district, and/or Defendants' infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

17.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their infringing business activities at consumers in the United States through sophisticated marketing campaigns and distribution networks, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites and domain names (the "Third Party Platforms"), under the Seller IDs, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

18.     Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants

and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

19.     Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

20.     Upon information and belief, Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to Pennsylvania. Further, those Defendants making sales to Pennsylvania customers are required to collect and remit Pennsylvania sales tax.

21.     Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment of the Infringing Products.

22.     Komuso also markets and offers for sale its genuine products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet.

23.     Upon information and belief, and based on detailed market analysis and consumer reports, Defendants are deliberately employing and benefiting from sophisticated, coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Komuso and the consuming public by (i) depriving Komuso of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Komuso Products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Komuso's goods; and (iii)

increasing Komuso's overall cost to market their goods and educate consumers about their brand and products.

24.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

25.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

26.     Upon information and belief, Defendants are aware of Komuso Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Komuso in the United States, in Pennsylvania and in this judicial district specifically, as Komuso conducts substantial business in Pennsylvania.

**Venue**

27.     Venue is proper in this Court under 28 U.S.C. § 1400(b), the specific venue statute for patent infringement actions which states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement." Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "In making a determination as to whether venue is proper under §1391(b)(2), '[t]he test . . . is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim'[.]'" *Kneuven v. Lysten, LLC*, Civil Action No. 2:23-cv-00368, 2023 U.S. Dist. LEXIS 187157 at *6 (W.D. Pa. Oct. 17, 2023) (quoting *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012)). Section 1391(b)(2) does not require a court to determine the best forum, or the forum with

the most substantial events. *Murphy v. Humbolt Clothing Co.*, Civil Action No. 1:20-cv-58-SPB, 2021 U.S. Dist. LEXIS 17072 at *21 (W.D. Pa. Jan. 29, 2021). "In fact, venue may be proper in more than one district. It is necessary 'only that a substantial part of the events occurred [in the forum where suit is brought].'" *Id.* (quoting *Stursberg v. Morrison Sund, Pllc*, No. CV 20-1635-KSM, 2020 U.S. Dist. LEXIS 233042, 2020 WL 7319546, at *16 (E.D. Pa. Dec. 11, 2020)).

28.     Here, Komuso's comprehensive infringement investigation documented extensive and systematic sales of products that infringe the Asserted Patents, with particular focus on Defendants' targeted marketing and sales activities in Pennsylvania. Therefore, a substantial part of the events giving rise to Plaintiff's claims occurred within this forum. As discussed above and shown in Plaintiff's presented evidence attached as **Exhibit 5**, each of the Defendants offers for sale products infringing upon the Asserted Patents to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and selling Infringing Products in this forum. This evidence is included in the table below:

| Seller ID and Doe # | Evidence |
|---|---|
| **DOE #15** ▓▓▓ ▓▓ ▓▓▓▓ | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |

| Seller ID and Doe # | Evidence |
|---|---|
| **DOE #4** ███ ██████ |  |
| **DOE #46** █████ ██████ ██████ | |

| Seller ID and Doe # | Evidence |
|---|---|
| **DOE #41** ▆▆▆▆ ▆▆▆▆▆ ▆▆▆▆▆ |  |

29.     Although Defendants may have also sold Infringing Products in districts outside this Court's jurisdiction, each Defendant's offer for sale within the forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. *See Murphy* 2021 U.S. Dist. LEXIS 17072 at *21. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue, and explaining why the case should be dismissed or transferred.

30.     If this Court determines that Defendants' actions in the forum are not sufficiently substantial to support Plaintiff's claims, venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. As discussed herein, Defendants are subject to personal jurisdiction before this Court arising from their tortious acts within the forum. Additionally, Defendants are foreign companies who do not reside in any other United States judicial district, as provided for in Section 1391(b)(1); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants. Similarly, Section 1391(c)(3) states that non resident defendants may be sued in *any* judicial district. *See Nationwide Prop. & Cas. Ins. Co. v. Rockford Commer. Warehouse, Inc.*, No. 2:18-cv-01458-RJC, 2020 U.S. Dist. LEXIS 74182 at *13 (W.D. Pa. Apr. 28, 2020) (holding that venue was proper over a China-based company in any district). Even if the Court finds that personal jurisdiction is lacking, venue is still proper under statute.

31.     Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not

reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

32.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of the Infringing Products through the Seller IDs, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

## THE PARTIES

### Plaintiff POM Group Inc.

33.    POM Group Inc, d/b/a Komuso Design, ("Plaintiff" or "Komuso"), was established by Mr. Todd Joseph Steinberg ("Mr. Steinberg"), the founder and President of Komuso, after developing his groundbreaking breathing device innovations. Komuso is a corporation registered in Florida with a principal place of business at 2761 NE 20th St, Fort Lauderdale, Florida 33305.

34.    Komuso is an industry-leading business that has invested substantial resources in research, development, and marketing of its patented breathing necklaces, which have generated significant sales and revenue since their introduction. Plaintiff's business conducts substantial commercial operations including sales and advertising of Komuso's Products. Komuso is the assignee and owner of all rights, title, and interest in the Asserted Patents.

35.    The Patent Act grants Plaintiff, as the rightful patent owner, the absolute and exclusive right to prevent others from making, using, offering for sale, selling, or importing any goods that embody or incorporate the novel and non-obvious innovations claimed in the '195 Patent, as well as the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell

14

goods protected by the '529 Design Patent. Any unauthorized use of these protected innovations constitutes direct infringement under 35 U.S.C. § 271.

36.     Komuso Products are renowned for their innovative and distinctive patented design, and widespread recognition. This unique design is instantly recognized by consumers worldwide, and Komuso Products have become the gold standard in therapeutic breathing devices, trusted by healthcare professionals and consumers alike for breathing regulation, anxiety management, and smoking cessation. Products styled after these designs are associated with the quality and innovation that the public has come to expect from Komuso Products. Images of genuine versions of the Komuso Products are attached hereto as **Exhibit 4**. Plaintiff uses its design in connection with the Komuso Products, including, but not limited to, the designs shown in the below table and in the drawings in **Exhibit 2**. Plaintiff's Patented Products, including those which embody the Plaintiff's patented design, are marked in compliance with 35 U.S.C. § 287(a) as shown by the komusodesign.com website shown in **Exhibit 1**.

| Patent Number | Claim | Issue Date |
|---|---|---|
| D840,529 |  FIG. 1    FIG. 2    FIG. 3    FIG. 4    FIG. 5 | Feb. 12, 2019 |

| Patent Number | Claim | Issue Date |
|---|---|---|
| | <br>FIG. 6    FIG. 7 | |

37.     Plaintiff has spent substantial time and money advertising its goods and plans to continue expanding its online advertising and promotion of the Patented Products through authorized third-party distributors. Over the past several years, visibility on the Internet, particularly via e-commerce platforms such as Temu, Amazon, eBay, TikTok, Wish, and Walmart, and others, ("Third Party Platforms"), has become increasingly important to Plaintiff's overall marketing strategy and the effectiveness of that strategy. Thus, Plaintiff and its authorized distributors will be expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with genuine versions of Plaintiff's Patented Products. Similarly, Defendants' individual Seller IDs are indexed on the Third Party Platforms and compete directly with Plaintiff for space in search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business. Prior to the infringement, Plaintiff held a dominant market share in the therapeutic breathing device industry. Following the widespread infringement of its Asserted Patents by online infringers, Plaintiff's market share has plummeted to approximately 20%, demonstrating the devastating and direct impact of Defendants' infringement on Plaintiff's market position.

**The Defendants**

38.     Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller IDs in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants conduct business or assist in business conducted throughout the United States (including within the State of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, importation, and sale of the Infringing Products. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Pennsylvania and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of the Infringing Products, which embody Plaintiff's Asserted Patents.

39.     The Seller IDs share unique identifiers establishing a logical relationship between them and reflecting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants deliberately and systematically engage in sophisticated concealment tactics designed to evade liability, including but not limited to masking their true identities, orchestrating complex networks of shell companies, and implementing automated systems to rapidly change their online presence - all while knowingly and willfully continuing their infringing activities, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products and listings.

40.     Upon information and belief, Defendants create online Seller IDs and advertise versions of products that embody Plaintiff's Patented Products without having sought or received

17

any form of permission, license, or authorization from Plaintiff. These actions constitute infringement of Plaintiff's patent rights.

41.     Defendants appear to be an interrelated group of infringers, who create the Seller IDs on various third-party online platforms and design these stores to appear to sell genuine versions of Plaintiff's Patented Products, while they actually sell inferior infringing imitations of Plaintiff's Patented Products. The Seller IDs share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence. These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which Plaintiff intends to immediately seek through factual discovery in this action, Plaintiff will amend the Complaint accordingly.

## DEFENDANTS' UNLAWFUL CONDUCT

42.     The success of online sales of Plaintiff's Patented Products within the United States has resulted in widespread and systematic infringement of Plaintiff's Asserted Patents. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps. Plaintiff has identified hundreds of fully interactive e-commerce stores, including the Seller IDs, offering for sale, and/or selling Infringing Products to consumers in this Judicial District and throughout the United States.

43.     The Infringing Products comprise breathing devices that are either identical to or substantially similar to those claimed in the '195 Patent and embodied by Komuso's Products. Upon information and belief, the Infringing Products include each and every element of at least independent claims 1-7 of the '195 Patent, either literally or under the doctrine of equivalents. The striking similarity between the Infringing Products and Plaintiff's patented design, combined with Defendants' targeting of the same market channels and customer base, demonstrates willful and deliberate copying by Defendants. Specifically, the Infringing Products comprise breathing devices in a form of jewelry consisting essentially of the following elements:

an elongated tube having a length of 30 to 75 millimeters from a first end to a second end defining a central chamber having a uniform diameter of 3 to 6 millimeters throughout the length of the elongated tube;

an opening on the first end of the elongated tube constructed to be inserted into a user's mouth; an exit on the second end of the elongated tube; and

a securing structure connected to the elongated tube, the securing structure comprises a necklace or bracelet is configured to secure the elongated tube on the user as jewelry,

wherein the length and the diameter of the elongated tube are being constructed to restrict an exhaled breath of a user to slow breathing of the user to a desired breathing rate.

and:

a bail connected to the elongated tube constructed to mount the elongated tube to the securing structure.

an angled surface at the first end of the elongated tube.

wherein the elongated tube has a round, oval, square, polygonal, or irregular shape.

wherein an air flow rate through the device is adjustable by the user.

a removable end cap that restricts air flow there through.

the diameter of the central chamber through the elongated tube has been engineered to lengthen exhalations of the user.

(*See* '195 patent at 8:12-8:46).

44.     Additionally, the Infringing Products infringe upon the single claim of the '529 Design Patent.

45.     Plaintiff's factual investigation preceding the filing of this action revealed that Defendants have sold countless Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for genuine versions of Plaintiff's Patented Products. Screenshot images of the Infringing Products are attached hereto as **Exhibit 5**. Attached as **Exhibit 6** is a claim chart identifying the infringing elements of a representative accused product mapped onto Claim 1 of the '195 Patent.

46.     Defendants' making, using, offering for sale, sale, and importation of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not. To illustrate, below are several examples which show that the Infringing Products embody the '195 Patent:

| Plaintiff's Patented Product | Infringing Listing |
|---|---|
|  |  Doe No. 11: |

| Plaintiff's Patented Product | Infringing Listing |
|---|---|
|  | Doe No. 8: ▮▮▮▮▮▮▮ |
|  | Doe No. 10: ▮▮▮▮▮▮ |

| Plaintiff's Patented Product | Infringing Listing |
|---|---|
|  |   Doe No. 29: ▮▮▮▮▮▮ |

47.     Defendants' unauthorized manufacture, distribution, offering for sale, sale, and/or importation of the Infringing Products is irreparably harming Plaintiff and its business.

48.     To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

22

49.     The Seller IDs share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

50.     E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple Seller IDs in attempts to avoid detection and to readily pivot to a new Seller ID when it has been restrained due to trafficking in counterfeit products.

51.     As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Seller IDs so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Online internet stores such as the Seller IDs appear sophisticated and accept payment in U.S. dollars via credit cards, Shop Pay, Apple Pay, Google Pay, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Online internet stores like the Seller IDs often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized any of the Defendants to make, use, offer for sale, sell, or import unauthorized, infringing imitations of Plaintiff's Patented Product. None of the Defendants are authorized to sell Plaintiff's Patented Product.

52.     Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller IDs by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

53.     Upon information and belief, Defendants regularly register or otherwise acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on other domain names and e-commerce platforms such as Amazon, Temu, TikTok, Etsy, Walmart, and other Third Party Platforms.

54.     These seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

55.     Upon information and belief, each Defendant operates more than one merchant storefront.

56.     Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

57.     Upon information and belief, based on sales data analysis and market research, each Defendant has sold more than 150,000 units of the Infringing Product through their various online storefronts and distribution channels.

58.     Upon information and belief, based on market data analysis and sales volume estimates, each Defendant's profits from the sale of the Infringing Products total at least $100,000 and potentially exceed $2,000,000.

## JOINDER OF DEFENDANTS

59.     As stated above, upon information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized online retailers such as the Seller IDs often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images. The Infringing Products offered for sale by unauthorized retailers such as the Seller IDs often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

60.     Upon information and belief, based on evidence from prior similar cases and ongoing investigations, groups of infringers may communicate and coordinate their activities through various networks and platforms. Plaintiff has identified evidence suggesting that similar infringers have used platforms such as WeChat, sellerdefense.cn, and kuajingvs.com to discuss tactics for operating multiple accounts and evading detection. See **Exhibit 7**. Plaintiff reserves the right to establish through discovery whether and to what extent these specific Defendants participated in such communications. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar

25

cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

61.     Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights.

62.     The evidence suggests that Defendants may operate as an interrelated group of infringers, who create numerous Seller IDs and design these stores in a manner that may cause consumer confusion regarding the source of the products, while selling unauthorized products that embody Plaintiff's patented inventions.

63.     The Seller IDs share unique identifiers, such as the following: common design elements, the same or similar infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced infringing products and volume sales discounts. Defendants also share common advertising images and testimonials used to offer for sale infringing products. See the screenshots below illustrating this common usage. The foregoing similarities establish a logical relationship between the Defendants and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

64.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[2].

65.    Defendants' sophisticated tactics to conceal their identities and operations, including the use of multiple aliases and offshore accounts, have deliberately impeded Plaintiff's ability to determine the full scope of their illegal network, necessitating broad discovery to expose the complete extent of their infringing activities. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### COUNT I
### PATENT INFRINGEMENT OF U.S. PATENT NO. 11,433,195 B2

48.    Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.    Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the '195 Patent.

---

[2] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

50.     Defendants' Infringing Products and the invention claimed in the '195 Patent are substantially identical.

51.     Defendants' Infringing Products misappropriate the novelty of the invention claimed in the '195 Patent that distinguished Plaintiff's patented invention from the prior art thereby leading to allowance of the associated patent application and subsequent patent issuance.

52.     Defendants' making, using, offering for sale, sale, and importation of the Infringing Products constitutes both literal infringement of the '195 Patent as well as infringement under the doctrine of equivalents, causing substantial and irreparable harm to Plaintiff's patent rights, market position, and goodwill, including lost sales, and price erosion that cannot be adequately compensated by monetary damages alone.

53.     Defendants have infringed, and continue to infringe, the '195 Patent both directly and indirectly.

54.     Defendants will continue to infringe the '195 Patent unless enjoined by this Court.

55.     No licensing agreement(s) exists between Plaintiff and Defendants related to the '195 Patent or otherwise related to Plaintiff's Patented Products.

56.     Defendants have had both actual and constructive notice of Plaintiff's rights in the '195 Patent because the '195 Patent is marked on Plaintiff's Patented Products and/or the associated packaging with the patent number in accordance with 35 U.S.C. § 287. Plaintiff also lists the patent number associated with each of its products on its online storefront. Despite this notice, and upon information and belief, Defendants have continued their infringing activities.

57.     Defendants' infringement of the '195 Patent has been egregious, willful, deliberate, and intentional, with full knowledge of Plaintiff's patent rights and in conscious disregard thereof, as evidenced by their continued infringement after receiving notice of the patent through product

marking and their coordinated efforts to evade detection through multiple seller aliases and accounts.

58.     Defendants' infringement of the '195 Patent has caused Plaintiff to suffer severe and irreparable harm, including loss of market share, price erosion, reputational damage, and diminishment of its lawful patent rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing Plaintiff's Patented Products.

59.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

60.     Plaintiff is entitled to recover its actual damages, including its lost profits or a reasonable royalty, pursuant to 35 U.S.C. § 284. Plaintiff seeks damages to be proven at trial, including but not limited to lost profits calculated based on the number of infringing products sold by Defendants multiplied by Plaintiff's profit margin per unit, or alternatively, a reasonable royalty rate to be determined at trial, which should be increased due to Defendants' willful infringement applied to Defendants' total sales of infringing products.

61.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount found or assessed, due to Defendants' willful, deliberate, and egregious infringement of Claim 1-7 of the '195 Patent, among other claims.

## COUNT II
## INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D840,529

62.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

63.     Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the '529 Design Patent.

64.     When viewed through the eyes of an ordinary observer, giving such attention as a purchaser usually gives, the design of Defendants' Infringing Products is substantially the same as the designs claimed in Plaintiff's '529 Design Patent, such that the resemblance is sufficient to deceive observers and induce them to purchase one product supposing it to be the other. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff.

65.     The mechanism of infringement is conclusively demonstrated through side-by-side comparison showing Defendants' direct and systematic reproduction of each unique structural and ornamental element protected by the '529 Design Patent. Defendants are engaged in unauthorized manufacturing of products using identical design specifications, marketing and selling products that are substantially indistinguishable from the '529 Design Patent, thereby exploiting the distinctive ornamental characteristics protected by the '529 Design Patent. The infringement mechanism specifically involves copying the exact curved basin configuration, replicating the precise lip and drainage system, and reproducing the distinctive aesthetic design elements without authorization.

66.     Defendants' Infringing Products misappropriate the novelty of the designs claimed in the '529 Design Patent that distinguished Plaintiff's patented design from the prior art.

67.     Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental designs claimed in the '529 Design Patent. No licensing agreements exist between Plaintiff and Defendants regarding the patent at issue. Defendants have infringed the Plaintiff patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

68.     Defendants have had both actual and constructive notice of Plaintiff's rights in the '529 Design Patent, as Plaintiff has properly marked all products embodying the patented design and/or their packaging with the patent number in accordance with 35 U.S.C. § 287, and Defendants have deliberately copied Plaintiff's patented design despite such notice.

69.     Defendants' infringement of the '529 Design Patent has been willful, deliberate, and in reckless disregard of Plaintiff's patent rights, as evidenced by Defendants' exact copying of the patented design despite having notice of Plaintiff's patent rights.

70.     Defendants' willful and ongoing infringement of the '529 Design Patent has caused and continues to cause Plaintiff to suffer immediate and irreparable harm for which monetary damages are inadequate, including loss of market share, price erosion, reputational damage, loss of customer goodwill, and the fundamental loss of its lawful exclusionary rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the '529 Design Patent.

71.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

72.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the '529 Design Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

73.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount found or assessed, due to Defendants' willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, directing as follows:

1. An order requiring the domain registries and registrars for the Seller IDs, including, but not limited to, GoDaddy.com, LLC ("GoDaddy"), PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), Namecheap Inc. ("Namecheap"), Tucows Domains Inc, Name.com, Porkbun LLC, Cloudflare, Inc, and Squarespace, Inc, (collectively, the "Domain Registries and Registrars"), shall unlock and change the registrar of record for the domain names of the Seller IDs to a registrar of Plaintiff's selection, and that the Domain Registries and Registrars shall take any steps necessary to transfer the Seller IDs to a registrar account of Plaintiff's selection; or that the same Domain Registries and Registrars shall disable the Seller IDs and make them inactive and untransferable;

2. An order requiring the Domain Registries and Registrars to disable the name server information for the Seller IDs so that they are no longer accessible to Internet users for the pendency of this litigation;

3. An order requiring any Content Delivery Networks ("CDN"), such as Cloudflare, Inc and CloudFront, any hosting company, as well as any other service provider that provides content for the Seller IDs to cease providing infringing content and make the Seller IDs inaccessible to Internet users for the pendency of this litigation;

4. An order requiring the Domain Registries and Registrars and any CDN such as Cloudflare and CloudFront, or any hosting company as well as any other service provider or Third Party Provider that provides content for the Seller IDs to provide accurate contact information including a current e-mail address for the owner(s) and operator(s) of each Seller ID.

5. Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them

32

be permanently enjoined and restrained from the following activities, as Plaintiff has demonstrated (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate Plaintiff for that injury; (3) that, considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction:

    (a)    making, using, offering for sale, selling, and importing any product not authorized by Plaintiff that includes any reproduction, copy, or colorable imitation of the invention claimed in the Asserted Patents, or inducing others to do the same;

    (b)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

    (c)    aiding abetting, contributing to, or otherwise assisting anyone in infringing the Asserted Patents;

6. Entering an Order directing that Defendants deliver for destruction all products, molds, tools, materials, and other items used to manufacture products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the invention claimed in Plaintiff's Asserted Patents;

7. Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, online marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within five (5) business days of receipt of an Order entered by this Court:

    (a)    Locate all accounts connected to Defendants;

      (b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)     Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order;

8.     Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, third party providers and online marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

      (a)     Locate all accounts connected to Defendants;

      (b)     Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

      (c)     Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(1)     Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patents, including but not limited to Plaintiff's lost profits, price erosion damages, Defendants' total profits from the sale of the infringing products pursuant to 35 U.S.C. § 289, and in the alternative, a reasonable royalty, together with prejudgment and post-judgment interest.

(2)     Awarding Plaintiff all other damages that it may be entitled to under applicable law.

(3)     Awarding Plaintiff its costs in bringing this action.

9.     Declaring this case exceptional due to Defendants' willful and deliberate infringement and awarding Plaintiff its reasonable attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285; and

10.    Awarding Plaintiff any and all other relief that this Court deems just and proper.


Date: December 9, 2025                                   Respectfully submitted,


                                                         By: /s/ Michael Mitchell
                                                         Michael Mitchell ARDC 6324363
                                                         Shengmao (Sam) Mu, NY #5707021
                                                         Abby Neu ARDC 6327370
                                                         Keaton Smith ARDC 6347736
                                                         **WHITEWOOD LAW PLLC**
                                                         57 West 57th Street, 3rd and 4th Floors
                                                         New York, NY 10019
                                                         Telephone: (917) 858-8018
                                                         Email: mmitchell@whitewoodlaw.com

# Index of Exhibits

| Exhibit No. | Description |
|:---:|:---:|
| 1 | Komusodesign.com website |
| 2 | U.S. Patent No. 11,433,195 |
| 3 | U.S. Design Patent No. D840,529 |
| 4 | Authentic Komuso Products Showing Distinctive Protected Features |
| 5 | Infringement evidence |
| 6 | Infringement claim chart |
| 7 | Evidence of Coordinated Infringing Activities Between Counterfeiters |

## Schedule A

| Doe No. | Seller Alias | Platform | Seller ID |
|---------|--------------|----------|-----------|
|         |              |          |           |

| Doe No. | Seller Alias | Platform | Seller ID |
|---|---|---|---|
| | | | |