IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| POM GROUP INC,<br><br>          *Plaintiff,*<br><br>   v.<br><br>SCHEDULE A DEFENDANTS,<br><br>          *Defendants.* | Civil Action No. 2:25-cv-1909<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff POM Group Inc ("Plaintiff") has an extensive business presence all over the country, including in Pennsylvania. It is owned and operated by Todd Joseph Steinberg ("Steinberg"), who has developed and commercialized innovative breathing necklaces that enable users to control their breathing and achieve mindfulness.[1] Plaintiff's products are sold via the official company website *https://www.komusodesign.com* and through its official storefront on *Amazon.com*. Plaintiff brought this action because it conducted an online investigation and discovered that the named defendants were selling products that embodied its patents, despite having no license or authorization from Plaintiff. (ECF No. 1). The Court granted a temporary restraining order on December 11, 2025 (ECF No. 29), and then a preliminary injunction against all named defendants on January 5, 2026 (ECF No. 52). On February 10, 2026, Defendant Nos.

---

[1] Steinberg applied for a patent for his invention on August 24, 2017. The United States Patent and Trademark Office issued the '195 Patent, which is entitled "BREATHING DEVICE AND METHOD OF CONTROLLING BREATHING USING THE DEVICE," on September 6, 2022. (ECF No. 1-3). Steinberg applied for a patent for the innovative design on August 18, 2017. The United States Patent and Trademark Office and issued the '529 Design Patent, which is entitled "BREATHING APPARATUS," on February 12, 2019. (ECF No. 1-4).

41 (ataccommodate.com) and No. 44 (blaciokamith.com) (collectively, "Defendants") filed a Motion to Dismiss (ECF No. 66), arguing that the Court lacks personal jurisdiction over them, service was defective, and misjoinder occurred. Defendants also filed a Motion to Dissolve the Preliminary Injunction. (ECF No. 93). For the following reasons, both motions will be denied.

## I.    ANALYSIS

### A. DEFENDANTS' MOTION TO DISMISS

### 1. The Court has personal jurisdiction over Defendants.

Defendants argue that the case against them should be dismissed for lack of personal jurisdiction. Specifically, they contend that the only contacts with this forum—test purchases of the allegedly infringing products—are insufficient to confer specific personal jurisdiction. Absent significant contact with Pennsylvania, they argue that the Court cannot maintain personal jurisdiction over them.

In support of their motion, Defendants attach the declarations of Defendants' chief executive officers. (ECF Nos. 66-4; 66-5). Chief Executive Officer Xiaoyan Huang of Suzhou Rouxing Network Technology Co., Ltd., which operates the store identified as Defendant No. 41 (ataccommodate.com), averred:

> 3.    The Company is incorporated and has its principal place of business in People's Republic of China. The Company's employees are based in mainland China and operate the Store exclusively in China. The Company has never owned or utilized an office, hired employees, agents or representatives, maintained bank accounts, owned assets or properties, or qualified to do business in Pennsylvania or any other part of the United States.
>
> 4.    The Store sells unbranded, affordable, and trending consumer goods intended for practical and lifestyle use to buyers worldwide. Neither the Store nor the Company has targeted Pennsylvania residents with their advertisements or directed any marketing efforts or materials, of the allegedly infringing products at Pennsylvania.

(ECF No. 66-4, pp. 1-2).  In the same vein, Chief Executive Officer Xurui Li of Husdow Technology Co., Limited, which operates the internet store identified as Defendant No. 44 (blaciokamith.com), averred:

> 3.    The Company is incorporated and has its registered place of business in Hong Kong Special Administrative Region of the People's Republic of China.  The Company's employees are based in mainland China and operate the Store exclusively in China.  The Company has never owned or utilized an office, hired employees, agents, or representatives, maintained bank accounts, owned assets or properties, or qualified to do business in Pennsylvania or any other part of the United States.
>
> 4.    The Store sells unbranded, affordable, and trending consumer goods intended for practical and lifestyle use to buyers worldwide.  Neither the Store nor the Company has targeted Pennsylvania residents with their advertisements or directed any marketing efforts or materials, of the allegedly infringing products at Pennsylvania.

(ECF No. 66-5, pp. 1-2).  Both declarants represent that their respective company has made only one sale to the United States—the alleged test sale into this district.  (ECF No. 66-4, p. 2; ECF No. 66-5, p. 2).

Defendants contend that their scant contacts with Pennsylvania compel a finding that they are not subject to personal jurisdiction in this Court because they do not have the sufficient minimum contacts with Pennsylvania to allow a court sitting in Pennsylvania to exercise jurisdiction pursuant to the Fourteenth Amendment under the framework set forth by *International Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945) and its progeny.  Plaintiff counters that Defendants' sales into Pennsylvania are enough to establish the requisite contacts to exercise personal jurisdiction over them.  In the alternative, Plaintiff contends that jurisdiction is appropriate based on Defendants' contacts with the United States as a whole, rather than Pennsylvania or any of the several states, through Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)").  The Court agrees.

3

The Court holds that in the context of this case, Defendants' contacts with Pennsylvania are not the relevant consideration. Instead of the state-specific minimum contacts under the Fourteenth Amendment, the Court will look to the provisions of Rule 4(k)(2) and the broader concepts of fair play and substantial justice under the Fifth Amendment.

Rule 4(k)(2) is the equivalent of a federal long arm statute that extends personal jurisdiction over foreign defendants who are not subject to personal jurisdiction in any of the several states. It provides:

> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
>> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>>
>> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2). In sum, for Rule 4(k)(2) to apply, three prerequisites must be met under the plain language of the rule: "(1) the plaintiff's claim arises under federal law, (2) the defendant is 'not subject to jurisdiction in any state's courts of general jurisdiction,' and (3) 'exercising jurisdiction is consistent with the United States Constitution and laws.'" *King v. Bon Charge*, ---F.Supp.3d---, 2025 WL3764039, at *2 (D. Del. Dec. 30, 2025) (quoting Rule 4(k)(2)). If all three prerequisites are met, "then serving a summons establishes personal jurisdiction over that defendant in any federal court." *Id.*

Here, there is no dispute that Plaintiff's claims arise under federal law. The complaint asserts two counts alleging that Defendants infringed on its registered U.S. patents—quintessential federal claims. The first prerequisite for personal jurisdiction under Rule 4(k)(2) is met.

Next, the Court must determine whether Defendants are subject to personal jurisdiction in the courts of any state. As the *King* court observed, there is a circuit split on which party has the burden to show whether a defendant could be subject to jurisdiction in a state. *Id.* Because this case involves claims of patent infringement, the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over any appeal. 28 U.S.C. § 1295(a)(2). Thus, caselaw from the Federal Circuit is relevant to determine the burden of showing that a defendant is not subject to the jurisdiction of any state for the purposes of Rule 4(k)(2).

The Federal Circuit employs a burden-shifting approach that requires a plaintiff to make out a prima facie case that Rule 4(k)(2) applies, and then requires a defendant to produce evidence that it is subject to suit in one of the several states:

> As noted, one precondition for applying Rule 4(k)(2) is that the defendant must not be subject to personal jurisdiction in the courts of any state (sometimes called the "negation requirement"). *Id.* at 1293. Although the burden of establishing personal jurisdiction ordinarily falls on the plaintiff, in the context of Rule 4(k)(2) that general proposition would saddle the plaintiff with an extraordinary challenge in "proving a negative many times over," that is, demonstrating that the defendant is not subject to jurisdiction in each of the fifty states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009). We have therefore adopted a burden-shifting mechanism so that "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* at 1415 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001)).

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

Plaintiff invoked Rule 4(k)(2), pointing to the fact that Defendants deny being subject to the jurisdiction of any state. (ECF No. 79, p. 10). This is enough to meet Plaintiff's relatively light burden. While Defendants' motion and supporting documents do not expressly aver that they are not subject to jurisdiction in the courts of any state, that is the clear implication of their declarants' statements. Both contend that they are not "qualified to do business" in Pennsylvania or any of the United States and that they have no operations or employees in any of the United

States.    (ECF Nos. 66-4, 66-5).    Moreover, each contend that the single sale into the Commonwealth of Pennsylvania is their only commercial activity in the United States.  This is enough to shift the burden to Defendants to identify a state where they would be subject to personal jurisdiction.  They have failed to do so; they make no showing that jurisdiction would be appropriate in any state. (ECF No. 82, pp. 6-7).  The Court holds that the second prerequisite of Rule 4(k)(2) has been established.

The final prerequisite for Rule 4(k)(2) to apply is that the exercise of personal jurisdiction over Defendants must be consistent with the Constitution and laws of the United States. Recently, the United States Supreme Court clarified in *Fuld v. Palestinian Liberation Org.*, 606 U.S. 1 (2025) that, unlike the exercise of personal jurisdiction by the states, the Fourteenth Amendment is not implicated under Rule 4(k)(2), but rather, the due process clause of the Fifth Amendment.  Prior to *Fuld*, "lower courts consistently assumed that the 'Fifth Amendment due process test for personal jurisdiction requires the same minimum contacts with the United States as the Fourteenth Amendment requires with a state.'" *King*, 2025 WL3764039, at *3 (citation omitted).  But "*Fuld* upset that assumption." *Id.* at 4.  In *Fuld*, the Supreme Court held that "the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard…." *Fuld*, 606 U.S. at 23.  The Court declined, however, "to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts." *Id.* at 18.  Nevertheless, while not incorporating the minimum contacts standard, "the prospect remains that the Fifth Amendment might entail a similar 'inquiry into the reasonableness of the assertion of jurisdiction in a particular case.'" *Id.* at 23 (citation omitted).

6

In the absence of a concrete test from the Supreme Court, it is left to the lower courts to decide how to apply the Fifth Amendment due process test in a specific case. In *King*, Judge Stephanos Bibas, sitting by designation, took a "cautious" approach that did not stray too far from the traditional pre-*Fuld* analysis. *King*, 2025 WL3764039, at *4. He found that the exercise of personal jurisdiction was appropriate where "[defendant] has minimum contacts with the United States, that [plaintiff's] claims relate to those contacts, and that exercising jurisdiction would be fair and reasonable." *Id.* The Court will take a similar approach.

The Court holds that Defendants had minimum contacts with the United States. "The minimum-contacts standard requires that a defendant 'purposefully avail itself of the privilege of conducting activities within the forum.'" *Id.* at *5 (quoting *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021)). Defendants purposefully availed themselves of doing business in the United States. Although both Defendants are located in China, and aver that all of their operations are located in China, their website storefronts clearly target their sales to the United States. Both Defendants attached screenshots of their sales websites to their motion. (ECF Nos. 66-4, 66-5). Both websites are in English. Both advertise prices exclusively in U.S. dollars. Both advertise that they accept payment in common American payment options, such as Paypal, Visa, Mastercard and American Express. (*Id.*). Both specifically advertise that they offer worldwide shipping. (ECF Nos. 66-4, p. 9; 66-5, p. 10). Indeed, as to Defendant No. 41, the site includes a map of the world expressly illustrating shipments to the United States. (ECF No. 66-4, p. 9). Finally, there is no dispute that Defendants made at least one sale, each, into the United States. The Court holds that Defendants have purposefully availed themselves of the privilege of doing business in the United States. Further, the Court holds that Plaintiffs' suit arises from Defendants' actions availing themselves of the United States market.

The final consideration is whether exercising jurisdiction over Defendants would be fair and reasonable. Reasonableness "will depend in each case on an evaluation of several factors, including the burden on the defendant, the interests of the forum state, and the plaintiff's interests in obtaining relief." *Fuld*, 606 U.S. at 24 (internal citations omitted). The Court holds that the forum—the United States—has a substantial interest in exercising jurisdiction over Plaintiff's patent infringement claims. To the extent that this country, or any country, offers protections to properly registered intellectual property, it has an interest in offering a reasonable judicial means of protecting the rights in that intellectual property. Otherwise, patents, or the like, are just paper promises, and patentholders are at the mercy of foreign pirates who infringe without the chance of meaningful redress. There is a strong corresponding interest in Plaintiff's ability to seek a remedy in a court of the United States. Plaintiff is an American company which holds the rights in American patents. It should not be forced to seek redress in the courts of the Peoples Republic of China, the home forum of the allegedly infringing Defendants, and a nation with a very different concept of due process and the rule of law. Indeed, absent the ability of Plaintiff to maintain suit in the United States, it will have no meaningful remedy. The interests of the United States and Plaintiff strongly weigh in favor of subjecting Defendants to jurisdiction in this Court.

The final question is whether the exercise of jurisdiction over Defendants in the United States imposes an undue burden on them. The Court holds that it does not. As the Court previously held when granting preliminary injunctive relief in favor of Plaintiff, there is more than a reasonable likelihood that Defendants have infringed upon Plaintiff's patent rights. Defendants actively marketed their accused products outside of China into the United States on English language websites, with prices in United States currency, and with offers to ship into the

United States. They made sales into the United States. Defendants purposefully availed themselves of the privilege of selling accused products into the United States. It is not unreasonable or unfair for them to be hailed into federal courts to answer for their conduct. The exercise of jurisdiction over Defendants is consistent with the due process requirements of the Fifth Amendment.

Having found that the requirements of Rule 4(k)(2) have been met, the Court may exercise personal jurisdiction over Defendants provided they were properly served. As explained below, the Court holds that they were properly served.

**2. Defendants were properly served.**

The Constitution requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)") governs the service of process on foreign defendants. It provides:

> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> > (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> >
> > > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > >
> > > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

9

(C) unless prohibited by the foreign country's law, by:

> (i) delivering a copy of the summons and of the complaint to the individual personally; or

> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f)(3).

The Court authorized alternative service on Defendants because Plaintiff was unable to locate their addresses despite diligent efforts. (ECF Nos. 5, 6, and 15). It is evident that Defendants operate via the internet and rely on electronic communications for the operation of their businesses. The Court found that service by e-mail and website publication was reasonably calculated to apprise Defendants of the pendency of this action and afford them an opportunity to present their objections. (ECF No. 15). Service by e-mail and website publication upon authorization of the Court is permissible under Rule 4(f)(3), provided it is not prohibited by international agreement.

Defendants contend that China is a signatory to the Hague Service Convention, but has objected to Article 10, which would permit service by "postal channels." As such, they argue that service by mail, including e-mail, is foreclosed. The Court rejects this position. As the district court held in *Vaswani, Inc. v. Manjunathamurthy, et al.,* Civil Action No. 2:20-cv-20288, 2021 WL 1541071, *4 (D.N.J. April 19, 2021), e-mail does not fall within the term "postal channels" as used in the Hague Convention. As such, even when a defendant's home country objected to Article 10, "email service is not barred by international agreement." *Id.*

Moreover, even if e-mail service was foreclosed by China's rejection of Article 10 of the Hague Convention, Defendants' objections would still come up short because the Hague

10

Convention is, by its own terms, inapplicable. It does not apply when the address of the person to be served is unknown. *See* Hague Convention, Art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). *See also United States v. 200 Acres of Land*, 773 F.3d 654, 659 (5th Cir. 2014) (recognizing that the Hague Convention does not apply when a defendant's address in unknown). In this case, Plaintiff requested alterative service because it did not know Defendants' addresses. The Court granted that request in light of the fact that Defendants, as well as their fellow Schedule A defendants, operate as electronic storefronts without evident physical addresses. Indeed, even the exhibits submitted by Defendants in support of their motion omit any mention of their physical addresses except to broadly aver that one is located in Hong Kong and the other on mainland China. In an instance like this, where Plaintiff reasonably lacked information about Defendants' addresses for traditional service, the Hague Convention does not apply.

Plaintiff effectuated service on Defendants in accordance with the Court's Order. (ECF No. 48). The alternative method of service was successful in effectuating actual notice of these proceedings as evidenced by the fact that Defendants have appeared and presented their objections to Plaintiff's complaint. The Court holds that Plaintiff effectuated legally sound service against Defendants pursuant to Rule 4(f)(3). The service of the summons was sufficient, as explained above, to subject Defendants to personal jurisdiction in this Court.

### 3. The Court finds, at this stage, that joinder was proper.

Defendants also argue that they are unaffiliated entities and are not properly joined. They also take issue with "Schedule A" litigation in general. Ultimately, they want the case against them dismissed in its entirety for misjoinder. (ECF No. 66, pp. 17–19).

11

As an initial matter, the relief Defendants seek—dismissal of the action—is not appropriate. The plain language of Federal Rule of Civil Procedure 21 states: "***Misjoinder of parties is not a ground for dismissing an action***. On motion of any party or on its own initiative, the Court may add or drop a party at any time on just terms. It may also sever any claim against a party." FED. R. CIV. P. 21 (emphasis added). The primary remedy for misjoinder is severance. In this case, Defendants are two of six defendants who are litigating the claims against them – the other Schedule A defendants have been voluntarily dismissed or the Clerk of Court has entered default against them. Thus, to the extent that severance is appropriate, the remaining Defendants would become parties to separate actions rather than this single action. There is no basis for severance.

Joinder of defendants is governed by Federal Rule of Civil Procedure 20(a)(2) ("Rule 20(a)(2)"), which states:

> Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2). The requirements of subsection (B) are plainly present. Plaintiff's claims against each defendant will inevitably involve common questions of law and fact—e.g., its rights in the patents at issue, whether the alleged infringement is actionable, etc. The Court holds that the requirements of Rule 20(a)(2)(B) have been established.

Therefore, the question is whether the requirements of subsection (A) have been met. Schedule A defendants may be joined in this action if, relevant to this case, the right to relief

12

asserted by Plaintiff arises "out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A). Analysis under Rule 20(a)(2)(A) is conducted on a case-by-case basis. *Doggie Dental, Inc. v. Cdoffice*, No. 2:21-CV-0027, 2021 WL 5411432, *3 (W.D. Pa. Sept. 7, 2021) (citations omitted). Based on the information currently before the Court—and recognizing that there has not yet been discovery on the merits of the parties' claims and defenses—the Court holds that Schedule A defendants are properly joined.

Plaintiff has pled that Defendants coordinated online-selling activity and had interconnected operations, including shared identifiers and common operational features across seller and user storefronts. (ECF No. 1, ¶¶ 59-65). For example, it pleads, "based on evidence from prior similar cases and ongoing investigations, groups of infringers may communicate and coordinate their activities through various networks and platforms. Plaintiff has identified evidence suggesting that similar infringers have used platforms such as WeChat, sellerdefense.cn, and kuajingvs.com to discuss tactics for operating multiple accounts and evading detection." (*Id.* at ¶ 60). As to Defendants' interrelated activities, Plaintiff pleads,

> The Seller IDs share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar checkout methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence. These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network.

(*Id.* at ¶ 41). When viewed in its totality, Plaintiff's complaint essentially alleges that Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products. Plaintiff

13

further pleads that Defendants go to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network.

Plaintiff's pleadings are afforded deference at this stage in the proceedings, and a plaintiff "'may plead allegations based upon information and belief, so long as there are no boilerplate and conclusory allegations and [p]laintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *Doggie Dental*, at *4 (quoting *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x. 263, 268 (3d Cir. 2016)). Plaintiff's allegations of interconnectedness between the Schedule A defendants are not merely boilerplate. Rather, even before the benefit of discovery, Plaintiff has been able to assert facts that demonstrate a plausible connection between the Schedule A defendants, at least enough to explore in discovery.

It is also of note to the Court that Defendants are represented by the same attorney and have pursued a unified defense. Counsel moved for admission to appear *pro hac vice* to represent them via one, single motion, and he has represented them as a group rather than as individual entities. At this stage, in light of the allegations pled in the complaint, the Court finds the joint representation of Defendants and the coordination of their litigation strategy is one factor that weighs against a determination of misjoinder.

The Court holds that Plaintiff has asserted more than enough facts to support its pleading that Schedule A defendants are related entities and/or act in concert to display and sell products that violate its patents. Plaintiff's allegations of interrelatedness are not mere boilerplate or speculation. This interrelatedness leads the Court to conclude that the requirements of Rule 20(a)(2)(A) have been met. Joinder was appropriate and Defendants' argument to the contrary is meritless.

Having found that the Court may properly exercise personal jurisdiction over Defendants, that they were properly served, and are properly joined, the Court will deny their Motion to Dismiss.

**B.  DEFENDANTS' MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION**

Defendants argue that the preliminary injunction entered against them should be dissolved.  First, they argue that the injunction must be dissolved because the Court lacks personal jurisdiction.  The Court has already decided, as explained above, that it has personal jurisdiction over Defendants.  Therefore, their Motion to Dissolve the Preliminary Injunction will be denied for the same reason as their Motion to Dismiss.

Defendants also argue that the asset restraint imposed by the preliminary injunction should be reduced to reflect the amount of loss caused by the allegedly infringing conduct.  They contend that the declarations submitted in support of their records shows that only nominal amounts are attributable to their sales into the United States.  Based on the obvious discrepancy between the statements in Defendants' declarations and the representations on their respective websites, the Court does not find their representations on sales to be credible.  The Court will deny the motion without prejudice to the extent that it seeks to amend the amount of the asset freeze.  The parties are directed to meet and confer to determine whether they can agree on a stipulated amount to remain frozen.  Absent an agreement, Defendants may reassert their motion and the Court will conduct an evidentiary hearing to determine the appropriate amount of the asset freeze.

Finally, the Court denies the motion as moot to the extent that it objects to expedited jurisdictional discovery.  The Court has already made its determination on personal jurisdiction.  Further, the case is now ready to proceed into ordinary merits discovery.

## II.    CONCLUSION

For the aforementioned reasons, Defendants' motions (ECF Nos. 66 and 93) will be denied by Order of Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 4/16/26

16